**Julian DOMINGUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–83–00191–CR.**

Court of Appeals of Texas, El Paso.

Nov. 16, 1983.

Charles Campion, Don King, Jr., San Antonio, for appellant.

Edward Shaughnessy, III, San Antonio, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal from a conviction for murder. The court assessed punishment at twenty years imprisonment. We affirm.

The primary issue in this case was insanity and whether such condition was produced by voluntary or involuntary drug intoxication. The first trial of this cause was without jury. Appellant was convicted, but a new trial was granted due to the intoxication issue. A second jury trial resulted in a hung jury. This appeal arises out of the third trial.

Appellant resided in a duplex with six other family members. He suffered from obesity. A doctor prescribed a diet medication, Fastin, which was similar to amphetamines in its chemical properties. The prescription was for one tablet per day. Appellant began taking two per day, allegedly after consulting the physician. In September, 1978, he began to feel strange and to experience accelerated heartbeat and heightened blood pressure. He consulted another clinic whose staff doctor confirmed the drug's effect on his cardiovascular system and warned him to cease taking the medication. He abstained for one month but began to regain weight. He contacted

the original doctor by telephone and was allegedly told to resume the medication.

During the last week of October, Appellant began to experience auditory hallucinations and paranoid delusions of evil spirits. On the night of November 3, while in an apparent psychotic state, he fatally stabbed his father at the latter's place of employment. He drove to San Marcos to dispose of bloody clothing, returning to his San Antonio home in the early morning hours. During breakfast, he stabbed his cousin Mary Ledesma eighteen times with a kitchen knife. She died three weeks later of complications arising out of the various stab wounds. The prosecution was for the murder of Mary Ledesma. When police arrived at the scene, Appellant was striking the living room wall with his fist saying, "I'm okay. I'm not crazy any more. I won't hurt you. The devil made me do it." He offered no resistance when taken into custody. Testimony from jail guards and the county psychiatrist disclosed that during the first two weeks of incarceration in an isolation cell he sat on the floor, nude, taking no nourishment. He lost sixty pounds. He stared vacantly and talked only to himself or imagined voices. He drank water from the jail commode. He recovered somewhat after administration of anti-psychotic medication. In February, 1979, he was committed to Rusk State Hospital for a period of five months and released after attaining competency to stand trial. He remained on bond until late 1980 when the hallucinations began to reoccur. His surety surrendered him to the sheriff's department and he was recommitted to Rusk.

■ Appellant testified that at the time of the stabbings he believed that the figures before him were devils and not human beings. But for the delusions, he would not have attacked either his father or his cousin. Appellant had no prior criminal record and was described as a peaceful individual, on excellent terms with both victims. Two psychiatrists testified that Appellant was suffering from a drug-induced psychosis at the time of the offenses and that such mental illness rendered him incapable of conforming his conduct to the requirements of the law or perceiving the wrongfulness of his acts. Dr. Srinivasan, Director of Rusk State Hospital, further testified that in his opinion Appellant was already predisposed to a psychotic state of paranoid schizophrenia and that the drug triggered this latent condition. The State offered no significant medical rebuttal. The State did attempt to introduce evidence of a volunteered statement by Appellant to arresting Officer De Luna that he had taken amphetamine, L.S.D. and marihuana upon several occasions between October 31 and the November 3 and 4 stabbings. The court erroneously sustained defense objections to this evidence. As a volunteered admission, not the product of custodial interrogation, the statement was not subject to exclusion under Tex.Code Crim.Pro.Ann. art. 38.22 (Vernon 1979). *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The evidence was highly relevant since the expert medical witnesses testified that these illicit drugs were much stronger than the prescribed Fastin. Either taken alone or in conjunction with the diet medication they would have been capable of producing the psychotic state otherwise depicted in the evidence. This would have been further evidence of a condition brought on by voluntary intoxication and should have been presented to the jury.

■ Ground of Error No. One contends that the verdict is contrary to the great weight and preponderance of the evidence of insanity under Tex.Penal Code sec. 8.01 (Vernon 1974). Appellant relies upon *Gardner v. State,* 85 Tex.Cr.R. 103, 210 S.W. 694 (1919), and *Kiernan v. State,* 84 Tex.Cr.R. 500, 208 S.W. 518 (1919), to which we might add this Court's opinion in *Schuessler v. State,* 647 S.W.2d 742 (Tex.App.—El Paso 1983, PDRG). Were we simply confronted with whether or not mental disease prevented Appellant's conformity to the law or his ability to perceive the wrongfulness of his conduct, this ground of error might be sustained. As in *Schuessler,* the evidence in this case unequivocally depicts a state of psychosis rising to the level of legal insani-

ty. Here, however, unlike the previously cited cases, there existed an issue as to the causation of the mental disease which affected whether or not the resulting insanity is a defense. Both the State and the Appellant contended that the mental disturbance was drug induced. Appellant urged an interpretation that the drug stimulus was a prescribed medication taken in accordance with medical instructions and without awareness of the possible side effects. Such an interpretation would support a jury finding of insanity due to involuntary intoxication and would exonerate the Appellant. *Torres v. State,* 585 S.W.2d 746 (Tex. Cr.App.1979); *Hanks v. State,* 542 S.W.2d 413 (Tex.Cr.App.1976). It was the State's position that the mental condition was triggered by substance abuse amounting to voluntary intoxication and providing no defense to liability. Tex.Penal Code sec. 8.04 (Vernon 1974). While the State was erroneously deprived of evidence indicating Appellant's use of L.S.D., marihuana and amphetamines immediately prior to the stabbings, the evidence relating to the diet prescription still provided a basis for the State's theory. The original prescription directed a dosage of one tablet daily. Appellant admitted doubling that dosage. He did testify that the prescribing physician telephonically authorized such an increase, but the jury was free to reject that testimony. Furthermore, Appellant had experienced difficulties with the medication and consulted with another physician. The latter warned him not to use the drug and he refrained for a period of one month. He testified that he resumed the medication only after contacting the prescribing physician, but once again this was for the jury to accept or reject. In any event, by his own admission he had experienced an adverse reaction to the medication and had received conflicting medical advice as to its use. In *Hanks,* the Court of Criminal Appeals held that the defendant was not entitled to a defense of involuntary intoxication because he knew some foreign substance had been introduced into his drink. He did not know the exact nature of the substance or its possible effects but was on notice to a de-

gree justifying prudence and caution in consuming or rejecting the drink. In consuming it, he exercised independent judgment and volition precluding a finding of involuntary intoxication. The evidence in this case raises the same issues and was sufficient to support a jury conclusion that continued use of the medication, particularly at the higher dosage, constituted voluntary intoxication. Ground of Error No. One is overruled.

■ In Ground of Error No. Two, Appellant contends that the court erred in charging the jury on voluntary intoxication. We disagree. Both parties focused on a drug-induced psychosis. As discussed above, the evidence presented a disputed issue as to whether the prescribed medication was taken in an abusive manner. It was not error to charge the jury that voluntary intoxication producing insanity is no defense. Ground of Error No. Two is overruled.

■ In Ground of Error No. Three, Appellant complains of the court's rejection of his proffered charge on involuntary intoxication. While we find nothing objectionable in the requested charge, we find that the charge actually administered by the court did adequately present the affirmative defense urged by the Appellant. The court included the involuntary intoxication standard at page 4 of the charge, presented an abstract explanation and then applied the law to the facts. The jury was advised that if Appellant were incapable of conforming his conduct to the requirements of the law or recognizing the wrongfulness of his conduct due to involuntary intoxication then they should acquit. Both "intoxication" and "involuntary intoxication" were properly defined in the language of *Torres, Hanks* and Penal Code sec. 8.04. The charge adequately addressed the issues raised and protected Appellant's rights. Ground of Error No. Three is overruled.

■ In Ground of Error No. Four, Appellant complains that the prosecutor's final argument was outside the record, presenting other evidence of drug abuse. The first passage objected to was a reference to the

medical testimony that other more potent drugs would be more likely to cause the psychosis than the prescribed diet medication. No reference was made to other evidence of the use of other drugs. The objection was properly overruled. As the prosecutor resumed by saying "[i]n the record," Appellant's counsel again objected. This time, perhaps out of an abundance of caution, the court sustained the objection and admonished the jury to rely upon their own recollection of the evidence. No mistrial was requested. We also note that earlier efforts by the State to introduce evidence of other drug usage were made while the jury was absent from the courtroom. No error is shown in the challenged argument. Ground of Error No. Four is overruled.

The judgment is affirmed.