

IN THE
TENTH COURT OF APPEALS

No. 10-11-00393-CR

RALPH EDWIN CRESSMAN,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 82nd District Court
Falls County, Texas
Trial Court No. 8921

## MEMORANDUM OPINION

Ralph Edwin Cressman was convicted of the offense of Indecency with a Child and sentenced to 10 years in prison. TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011). Because there was no harm in the erroneous admission of evidence that Cressman "had been accused of this type of thing before" or that "somebody had made an accusation against him," the trial court's judgment is affirmed.

### BACKGROUND

Cressman lived with his girlfriend, Sandra. Sandra's 12 year-old granddaughter,

T.H., spent a lot of time at their house during the summer of 2010. T.H. and Cressman watched a lot of movies during that time. While watching the movies, Cressman would sit on the couch and T.H. would lay her head on a pillow in Cressman's lap. During the movies, Sandra would spend most of her time playing a game on the home computer, next to the couch. After school started, T.H. made an outcry that on three separate occasions, Cressman touched T.H. underneath her clothes: once on her bottom, once on her breast, and once on her pubic area.

## ISSUES ON APPEAL

In two issues, Cressman argues that the trial court erred in allowing the State to elicit testimony from Constable Michael Baker and Deputy Mike Russ that Cressman had a prior accusation against him. Specifically, Cressman argues that the statement to Baker was irrelevant and if relevant, the danger of unfair prejudice outweighed its probative value. He also argues that under any theory, he did not "open the door" to the State's introduction of his statement to Russ.

## TESTIMONY

Baker testified that after a forensic interview with T.H., he and Shanna Rogers, a Department of Family and Protective Services caseworker, went to Cressman's house to talk to him about the allegations made by T.H. During Constable Baker's testimony, the State asked if Cressman had indicated that "he had been accused of this type of thing before." Baker answered affirmatively at the same time Cressman objected. The

objection was immediately overruled, but Cressman requested a conference outside the presence of the jury. At that conference, Cressman argued that Cressman's former stepdaughter made the allegation 20 years ago and after a full investigation, he was never charged with an offense. After some discussion and after the State assured the Court that it was admissible because Cressman volunteered the statement, the State was allowed to repeat the question and have Constable Baker answer in front of the jury, which he did.

Deputy Mike Russ of the Falls County Sheriff's Department later testified that Constable Baker had to turn the case over to him. To familiarize himself with the case, Russ again spoke with Cressman. During direct examination at trial, the State asked Russ to restate what Cressman thought might have happened in connection with the allegations by T.H. Russ stated that Cressman said he and T.H. were watching TV when he noticed that his hand was in her pants on her "butt." But when Cressman noticed where his hand was, he jerked it back. The State asked what happened next. When Russ started relaying that he asked Cressman why, the State stopped Russ from completing the statement.

On cross-examination, Cressman's counsel made sure the jury knew that the conversation with Russ was voluntary, that Cressman was not under arrest, and that he had counsel with him. Counsel then reiterated Russ's direct examination testimony about what Cressman had told him. The following exchanged took place:

Q: Said one time he noticed that his hand was on her butt and he jerked his hand back, right? That's what he said in your statement here?

A: Yes, sir.

Q: Pulled his hand back, okay.

Counsel passed the witness.

The following exchange immediately took place on re-direct by the State:

Q: Did you ask him why he jerked his hand back?

A: Yes.

Q: And what did he say?

A: He said that he didn't want her to make any accusation — false accusations against him.

Q: And what did you ask him?

A: I asked him if he had ever had anybody make accusations against him like that before.

Cressman objected, to which the State responded, "[H]e went there," and the objection was overruled. Russ was allowed to further explain that Cressman admitted an accusation had been made against him 15 years ago.

### RELEVANCE/DANGER OF UNFAIR PREJUDICE

Cressman argues that his statement as testified to by Baker was irrelevant and if relevant, the danger of unfair prejudice outweighed its probative value. At trial, Cressman complained that the State was "bringing in stuff he's not charged with…[t]hey can't bring that up…[n]othing to do with this case." The State does not

dispute that these complaints amounted to an objection as to the statement's relevance. Cressman also expressed concern about the prejudicial impact of the statement on the jury and objected on that basis as well.[1]

We review a trial court's Rule 401 and 403 decisions for an abuse of discretion. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993). A reversal will occur only if the trial court's decision is outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 150 (Tex. Crim. App. 2001).

*Relevance*

Rule 401 defines "relevant evidence" as evidence having any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence. TEX. R. EVID. 401; *see also Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence. *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).

At trial, the State's only explanation for the introduction of Cressman's statement as testified to by Baker was that it had been volunteered by Cressman. Although we have found cases where volunteered statements were relevant, and therefore,

---

[1] Cressman stressed to the trial court: "I think if you let that statement come in, that he volunteered this, it's going to incredibly prejudice this jury. We can't get a fair trial," and "[b]ut to let that in before the jury, it's going to prejudice this jury."

admissible, [2] we have found no cases that hold a statement is automatically admissible simply because it is volunteered.

On appeal, the State cites *McCraw v. Maris*, 837 S.W.2d 646, 649 (Tex. App.—Dallas 1990), *rev'd on other grounds*, 828 S.W.2d 756 (Tex. 1992), for the proposition that evidence of similar happenings will almost always be probative of some issue of consequence to the resolution. The State argues that the issue of consequence was Cressman's intent. However, the statement made by Cressman regarded a vague accusation, nothing more. It was merely a prior accusation of "this type of thing" possibly 20 years earlier.[3] There were no details of what "this type of thing" might have been, who the alleged victim was, or any other facts regarding the alleged event. The jury was left to speculate as to what he was accused of, possibly some greater crime against a child.

The State also contends it finds support for its argument through the decisions in *Morgan v. State*, 692 S.W.2d 877 (Tex. Crim. App. 1985) and *Baldonado v. State*, 745 S.W.2d 491 (Tex. App.—Corpus Christi 1988, pet. ref'd). We find these cases to be inapplicable to this appeal.

In *Morgan*, the Court of Criminal Appeals found testimony by the complainant,

---

[2] *Lewis v. State*, No. 07-08-00290-CR, 2010 Tex. App. LEXIS 4545 (Tex. App.—Amarillo June 16, 2010, no pet.) (not designated for publication) (defendant's volunteered statement of HIV positive status relevant); *Dominguez v. State*, 661 S.W.2d 759 (Tex. App.—El Paso 1983, pet. ref'd) (excluded volunteered admission that defendant took illegal drugs relevant to show voluntary intoxication (but not an issue raised by the State on appeal)).

[3] Cressman's counsel told the trial court the accusation was 20 years ago. Russ testified that Cressman said the accusation was 15 years ago.

that the appellant had touched her in a similar manner to the charged offense on previous occasions, and testimony by her sister, that the appellant had also fondled her, to be "facts of indubitable probative value as to appellant's intent." *Morgan*, 692 S.W.2d at 881. It also noted, "Before an extraneous offense is admissible to negate the possibility of accident…, such offense must be sufficiently similar in nature to the charged offense that the inference of improbability of accident logically comes into play." *Id.* In *Baldonado,* the Corpus Christi Court of Appeals found no error in the admission of extraneous acts of the appellant where two witnesses testified that the appellant had "committed similar extraneous acts." *Baldonado,* 745 S.W.2d at 496.

Here, while Cressman did express a defensive theory of accident, we have no testimony from a victim as to what was done to her by Cressman. Further, we have nothing to show that the accusation was sufficiently similar to the charged offense to be probative of intent or absence of mistake. We hold that the statement of a prior accusation, without more, is not probative in proving Cressman's intent. Accordingly the trial court erred in overruling Cressman's relevance objection.

### *Danger of Unfair Prejudice*

Even if the statement was relevant, evidence may still be excluded under Rule 403 if the danger of unfair prejudice substantially outweighs the probative value of the evidence. TEX. R. EVID. 403. Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Allen v.*

*State*, 108 S.W.3d 281, 284 (Tex. Crim. App. 2003); *Jones v. State*, 944 S.W.2d 642, 652-53 (Tex. Crim. App. 1996). The trial court has broad discretion in conducting a Rule 403 balancing test, and we will not lightly disturb its decision. *Allen*, 108 S.W.3d at 284. All testimony and physical evidence are likely to be prejudicial to one party or the other. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *Jones*, 944 S.W.2d at 653. It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable. *Id.*

A proper Rule 403 analysis by either the trial court or a reviewing court includes balancing the following factors: (1) the inherent probative force of the proffered item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-642 (Tex. Crim. App. 2006); *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

As discussed above in connection with the relevance objection, Cressman's statement about being accused before had little, if any, probative value in that it did not

make the current charge against him any more probable. This is especially evident when no other details were introduced during the guilt/innocence portion of the trial about "this type of thing" of which Cressman was accused. The jury was left to speculate as to what "this type of thing" actually was. Further, the State did not need this evidence. The State had a child victim (of teenage years) whose credibility was not seriously attacked and who could readily describe what Cressman had done to her. The State also had testimony from others who had seen inappropriate behavior from Cressman toward the victim. Although the presentation of the statement did not take much time, it did have the tendency to suggest a decision on an improper basis, distract the jury from the main issue, and be given undue weight by the jury because it tended to suggest that if Cressman had been accused of indecency with a child before, which was not sufficiently shown by the statement, he was more likely to have committed the acts against T.H. This is the classic type of "where there is smoke, there must be fire;" mere propensity evidence. Thus, after balancing the appropriate factors, we also find the probative value of Cressman's statement is substantially outweighed by the danger of unfair prejudice; and the trial court abused its discretion in allowing the introduction of that statement into evidence.

## OPENING THE DOOR

Cressman also argues that the trial court erred in later admitting similar testimony through Deputy Russ. Specifically, Cressman contends, under any theory, he

did not "open the door" to the State's introduction of his statement to Russ.[4]

The decision to admit evidence is within the discretion of the trial court. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling. *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982).

Generally, when a witness testifies and leaves a false impression with the jury regarding past arrests, convictions, charges, or "trouble" with the police, the witness "opens the door" to an inquiry into the veracity of his testimony. *Prescott v. State*, 744 S.W.2d 128, 131 (Tex. Crim. App. 1988). Testimony that might normally be inadmissible becomes admissible to correct the false impression the witness left with the jury. *Id*.

Cressman argues that the Rule of Optional Completeness most closely fits the situation in his case after reviewing and discounting other possible methods of "opening the door."

Since the adoption of the rules of evidence, Rule of Evidence 107, the Rule of Optional Completeness, has been recognized as encompassing the "opening the door" situation. *Winegarner v. State*, 235 S.W.3d 787, 792-793 (Tex. Crim. App. 2007) (Keller, P.J., dissenting) (citing *Fuentes v. State*, 991 S.W.2d 267, 279 (Tex. Crim. App. 1999). The necessity of completeness will justify the introduction, through the "open door," of

---

[4] We agree with Cressman that the State's response to Cressman's objection, "he went there," meant that Cressman "opened the door" to Russ's testimony. The State does not argue otherwise.

extraneous offense evidence, hearsay, or other matter that would otherwise be incompetent. *Fuentes*, 991 S.W.2d at 279 (*citing* Steven Goode, Olin Guy Wellborn II, and M. Michael Sharlot, 1 TEXAS PRACTICE GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 107.1 at 41 (West 1993)). The rule is not implicated until such time as a party attempts to have a portion of a conversation or other type of statement "given in evidence." TEX. R. CRIM. EVID. 107; *Washington v. State*, 856 S.W.2d 184, 186 (Tex. Crim. App. 1993). Then, the adverse party is entitled to introduce into evidence the remaining parts of the conversation, necessary to a full understanding of the evidence. *Washington*, 856 S.W.2d at 186.

The State was the first to elicit a portion of the conversation between Cressman and Russ, not Cressman. The State could not then say that when Cressman reiterated what the State had already elicited, Cressman opened the door for the remaining parts of the conversation. The State may not rely on its own questioning as an invitation to rebut the answers to that questioning. *Bishop v. State*, 869 S.W.2d 342, 345 (Tex. Crim. App. 1993). Thus, Cressman did not open the door to Russ's continued testimony through the Rule of Optional Completeness.

The State argues on appeal, however, that Cressman opened the door for Russ's continued testimony by pursuing a defensive theory of accident or mistake. Evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). But that type of

evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *De La Paz v. State*, 279 S.W.3d 336, 342-43 (Tex. Crim. App. 2009) (quoting Rule 404(b)). It can also be admitted to rebut a defensive theory that negates an element of the offense. *Id.* at 343.

Although Cressman claimed that his touching T.H., if he touched her at all, was an accident or mistake, Russ's testimony does not rebut this theory. First, we have no testimony from an alleged prior victim as to what was done to her by Cressman. Second, Russ's testimony was even more vague about the alleged accusation than was Baker's testimony. He merely testified that Cressman admitted that "an accusation" was made. Third, an alleged extraneous act must be sufficiently similar to the charged offense before it is admissible to negate the possibility of an accident. *Morgan v. State*, 692 S.W.2d 877, 881 (Tex. Crim. App. 1985). Here, we have nothing to show what the accusation was, what investigation was made, what facts had been established, or whether it was sufficiently similar to the charged offense. Thus, the statement of a prior accusation, without more, is not admissible to rebut Cressman's defensive theory, and the trial court erred in admitting Russ's testimony.

## HARM

Our review, however, does not end here. We must next determine whether the admission of Cressman's statement through either Baker or Russ was harmless under

Rule 44.2(b). *See Prible v. State*, 175 S.W.3d 724, 737 (Tex. Crim. App. 2005); *Newland v. State*, 363 S.W.3d 205, 209 (Tex. App.—Waco 2011, pet. ref'd); TEX. R. APP. P. 44.2(b). Rule 44.2(b) provides that any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b).

T.H. testified that Cressman touched her inappropriately on three separate occasions while at T.H's grandmother's house. Her grandmother was in the room on two of the occasions but was preoccupied with playing a game on her computer. T.H's mother, great aunt, and a friend of the family testified that they had seen Cressman act inappropriately with T.H. by holding her around the waist and kissing her on the lips for a long time. T.H's mother, Tammy, testified that shortly before she discovered that Cressman inappropriately touched T.H., Cressman touched Tammy's breast and later asked if he could play with her breasts. Further, the trial court instructed the jury in the court's charge that the jury could not consider testimony of "extraneous … bad acts" unless the jury found and believed beyond a reasonable doubt that Cressman committed the acts, if any.

Thus, after reviewing the record, and given the considerable evidence of guilt, we hold the trial court's error in allowing Baker and Russ to testify about Cressman's statement regarding a prior accusation did not affect Cressman's substantial rights and was, therefore, harmless. *See id.*

Cressman's first and second issues are overruled.

### CONCLUSION

Having overruled Cressman's two issues on appeal, we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed November 29, 2012
Do not publish
[CR25]