# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00007-CR

**Justin Drake Cooper, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2014-223, THE HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Justin Drake Cooper was charged with committing the felony offenses of aggravated assault with a deadly weapon and assault family violence with a prior conviction for assault family violence. *See* Tex. Penal Code §§ 22.01, .02. The indictment included enhancement paragraphs alleging that Cooper had prior convictions for assault family violence and aggravated sexual assault of a child. *See id.* §§ 22.01, .011, .02, .021. The jury found Cooper guilty of both charges. Cooper elected to have the trial court assess his punishment and pleaded true to the two enhancement allegations. The trial court sentenced Cooper to thirty years' imprisonment for both offenses. We will affirm the trial court's judgments of conviction.

## BACKGROUND

Cooper was charged with committing aggravated assault and assault family violence. The victim in both charges was Elizabeth Hardcastle with whom Cooper had a dating

relationship. Regarding the day in question, Hardcastle testified that she drove Cooper to her home and that Cooper was acting paranoid. When Hardcastle and Cooper arrived at her home, Cooper continued to act in a paranoid manner before and after he went inside. While they were inside her home, Hardcastle told Cooper that she was going to take him to his father's home and went to unlock the front door. When she reached the door, Cooper came up behind her, shut the door "really fast and locked it," "pushed [her] away," and stabbed her in the chest with a knife. After Hardcastle finished testifying, Dr. Marisa Mauro and Dr. John Fabian testified as expert witnesses concerning Cooper's affirmative defense of insanity, describing Cooper's mental state at the time of the offenses.

The jury charge included an instruction regarding the affirmative defense of insanity and regarding voluntary intoxication. After considering the evidence at trial, the jury found Cooper guilty of the charged offenses. Cooper appeals the trial court's judgments of conviction.

## DISCUSSION

**Insanity Defense**

In his first three issues on appeal, Cooper asserts that the evidence is legally and factually insufficient to support the jury's implicit rejection of his insanity defense. More specifically, Cooper contends that the evidence from the two expert witnesses established that he was insane at the time in question and that the evidence was insufficient to establish that his insanity was caused by voluntary intoxication.

Under the Penal Code, "[i]t is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not

2

know that his conduct was wrong," but the "term 'mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." Tex. Penal Code § 8.01. Because insanity is an affirmative defense, a defendant has the burden of proving it by a preponderance of the evidence. *See id.* § 2.04(d). This is "the same standard of proof as that employed in civil cases." *Matlock v. State*, 392 S.W.3d 662, 665 n.5 (Tex. Crim. App. 2013). "Texas law excuses a defendant from criminal responsibility if he proves, by a preponderance of the evidence, the affirmative defense of insanity." *Pham v. State*, 463 S.W.3d 660, 671 (Tex. App.—Amarillo 2015, pet. ref'd). "If the accused knows that his conduct is 'illegal' by societal standards, then he understands that his conduct is wrong, even if, due to a mental disease or defect, he thinks his conduct is morally justified." *Id.*

"There is a general presumption of sanity and the defendant bears the burden of proving, by a preponderance of the evidence, his insanity at the time of the conduct charged." *Martinez v. State*, 867 S.W.2d 30, 33 (Tex. Crim. App. 1993). Ultimately, the issue of whether the insanity defense was proved is a decision lying within "the province of the jury, not only as to the credibility of the witnesses and the weight of the evidence, but also as to the limits of the defense itself." *Bigby v. State*, 892 S.W.2d 864, 878 (Tex. Crim. App. 1994) (quoting *Graham v. State*, 566 S.W.2d 941, 952 (Tex. Crim. App. 1978)). "The issue of insanity is not strictly medical; it also invokes both legal and ethical considerations." *Id.* at 877. "[O]nly the jury can join the non-medical components that must be considered in deciding the ultimate issue." *Id.* at 878. Expert witnesses do not dictate the result. *Graham*, 566 S.W.2d at 949.

Although the Penal Code explains that insanity is an affirmative defense, Tex. Penal Code § 8.01, the Code also clarifies that "[v]oluntary intoxication does not constitute a defense to the commission of crime," *id.* § 8.04. Further, the Code defines "'intoxication'" as

3

meaning a "disturbance of mental or physical capacity resulting from the introduction of any substance into the body." *Id.* "[I]f a pre-existing mental condition does not 'in and of itself' render the accused 'legally insane,' 'then the recent use of intoxicants causing stimulation or aggravation of the pre-existing condition to the point of insanity cannot be relied upon as a defense to the commission of the crime itself.'" *Dana v. State*, 420 S.W.3d 158, 166 (Tex. App.—Beaumont 2012, pet. ref'd) (quoting *Evilsizer v. State*, 487 S.W.2d 113, 116 (Tex. Crim. App. 1972)). The voluntary-intoxication provision "nowhere limits the degree of attenuation that might exist between the voluntary ingestion of a substance and a resulting mental disturbance," and "psychosis directly or indirectly caused by the use of the drug," including through withdrawal from the drug, "is included within the statutory definition of intoxication." *Afzal v. State*, 559 S.W.3d 204, 214 (Tex. App.—Texarkana 2018, pet. ref'd).

In reviewing the legal sufficiency of the evidence supporting an adverse finding on an affirmative defense, reviewing courts first look for evidence that supports the jury's implied rejection of the defense and disregard all evidence to the contrary "unless a reasonable factfinder could not disregard that evidence." *Matlock*, 392 S.W.3d at 669. If no evidence supports the jury's implied finding, then appellate courts "search the record to see if the defendant had established, as a matter of law," the affirmative defense. *Id.* If the appellate court's review "reveals evidence supporting the defendant's position" but also shows that the evidence "was subject to a credibility assessment and was evidence that a reasonable jury was entitled to disbelieve," the appellate court may "not consider that evidence in" its matter-of-law assessment. *Id.* at 670. Under that standard, a "defendant is entitled to an acquittal on appeal despite the jury's adverse finding on his affirmative defense only if the evidence conclusively establishes his affirmative defense." *Id.*

4

"In the factual-sufficiency review of a rejected affirmative defense, an appellate court views the entirety of the evidence in a neutral light, but it may not usurp the function of the jury by substituting its judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony." *Id.* at 671. Under that standard, a reviewing "court may sustain a defendant's factual-sufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Id.* In those circumstances, the reviewing "court may reverse the trial court's judgment and remand the case for a new trial." *Id.* at 672. "Rarely will the fact-finder's determination regarding an insanity defense be overturned on appeal." *Afzal*, 559 S.W.3d at 208. Because the fact-finder "is the sole judge of the credibility and weight to be given to the testimony, [it] is free to believe or disbelieve all or part of any witness's testimony." *See id.* If there is conflicting evidence, reviewing courts "defer to the fact-finder's determination regarding the weight and credibility of those decisions because the fact-finder has the benefit of observing the witness' actions and demeanor." *Fisher v. State*, 397 S.W.3d 740, 745 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). "Evidence that is factually sufficient" to support a rejection of an insanity defense "is necessarily legally sufficient." *Reyes v. State*, 480 S.W.3d 70, 73 (Tex. App.—Fort Worth 2015, pet. ref'd).

During the trial, Hardcastle testified that the police called her to ask if she would pick Cooper up from a gas station "because he was causing disruption in town." When Hardcastle arrived at the gas station, Cooper "looked like he hadn't slept in three days." Further, Hardcastle related that Cooper had used methamphetamine in the past and that she thought that

5

he was on methamphetamine when she picked him up, but she stated that Cooper denied having taken any drugs for a few days. Hardcastle testified that Cooper asked her to drive him by the grocery store because he dropped something there and that once they arrived at the store, he walked behind a bush and recovered a glass object that she believed was "a meth pipe" because she had seen one before. When describing the drive to her home, Hardcastle related that Cooper could not stop moving between the front seat and the backseat and kept saying that there were people chasing him and that there was a person in the tailgate of her truck. Similarly, when discussing what happened when they arrived at her house, Hardcastle stated that Cooper jumped out of her truck, searched the area around her home because he was "looking for somebody," stated that there were people outside chasing him, went through several rooms and closets in her home, and called 911 to report that people were after him.

Cooper's expert witness, Dr. Mauro, testified that "Cooper was insane at the time of the alleged offense," that he "did not know that his behavior was wrong" and "wasn't capable of knowing it was wrong because he was so" irrational at the time, that he did not form an intent to hurt Hardcastle, that his "symptoms have remained extremely consistent and persistent and chronic" over the years that she has interviewed him, "and that his condition is a more organic mental health condition and not necessarily just attributed to some type of substance." Further, Dr. Mauro characterized Cooper as "very paranoid and hallucinating at the time of the alleged offense" and as irrationally believing that people were following him. Moreover, Dr. Mauro explained that Cooper has schizophrenia and could not have known his behavior was wrong due to that condition because "he was so severely mentally ill at that time." Dr. Mauro also related the people with schizophrenia typically cannot sit still for very long.

Although Dr. Mauro admitted that Cooper was originally diagnosed "with methamphetamine use disorder in remission in a controlled environment," meaning that he had a substance-use disorder in the past, she stated that she changed her diagnosis to schizophrenia because substance-abuse psychosis "generally resolves within about one month after the person has stopped taking the substance" and because he continued to exhibit delusions for four years while he was in custody. Similarly, Dr. Mauro admitted that it was possible that methamphetamine use could have induced Cooper's behavior, but she did not think methamphetamine use was the only contributing factor. Dr. Mauro testified that Cooper admitted to regularly using methamphetamine and other drugs for years and that the side effects of using methamphetamine include "excessive energy, . . . maybe not sleeping," and persecutory "delusions and hallucinations." Further, Dr. Mauro testified that long-term methamphetamine use can cause schizophrenia. Moreover, Dr. Mauro recalled that Cooper admitted that he used methamphetamine on the day in question and related that Cooper could have been affected by his methamphetamine use, but she reasoned that his use of methamphetamine likely had only a minor impact on his mental state. Finally, Dr. Mauro testified that voluntary intoxication, including withdrawal symptoms stemming from voluntary intoxication, is not a defense to criminal behavior.

The State's expert witness, Dr. Fabian, testified that two mental-health hospitals had diagnosed Cooper with psychosis caused by methamphetamine use, that Cooper admitted to regularly using methamphetamine years before the alleged offenses, that schizophrenia and methamphetamine-induced psychosis have similar symptoms, and that methamphetamine can trigger schizophrenia. Moreover, Dr. Fabian testified that he diagnosed Cooper with schizophrenia that was caused, at least in part, by his methamphetamine use, and Dr. Fabian also

7

related that Cooper has a methamphetamine-use disorder and that he displayed psychotic symptoms while on the drug. Additionally, Dr. Fabian explained that research has shown that individuals can have methamphetamine-induced psychosis years after they stopped taking the drug and that it was possible that Cooper's prior methamphetamine use was still causing his symptoms years later. Next, Dr. Fabian related that Cooper's "substance-induced psychotic condition turned into a more fixed-schizophrenia condition."

Furthermore, Dr. Fabian stated that Cooper provided inconsistent statements about whether he used methamphetamine on the day in question and that he told the police that he used methamphetamine the day before. Additionally, Dr. Fabian explained that an individual can experience withdrawal symptoms for a week or more after taking methamphetamine. Although Dr. Fabian said that Cooper's schizophrenia played "the significant part" on the day in question and that he was likely insane at that time, Dr. Fabian also stated that Cooper's schizophrenia could have been caused by his long-term methamphetamine use; that his behavior that day could have been impacted by his recent use of methamphetamine; that the methamphetamine "made him more paranoid, leading to the violent offense"; and that "there is likely evidence of methamphetamine-induced psychosis at the time of the instant offense."

In his testimony, Dr. Fabian explained that Hardcastle stated that Cooper was more paranoid and psychotic while using methamphetamine, that someone who uses methamphetamine for long periods of time will know the effects of using that drug, and that "Cooper knew about the effects of . . . methamphetamine and how it could lead to psychotic symptoms of paranoia." Further, Dr. Fabian explained that he concluded in his report that "[o]ne could opine that insanity is moot because of the voluntary ingestion of methamphetamine." Finally, Dr. Fabian related that Cooper admitted that he once feigned mental illness to make

8

money by selling the medicine that he was given. *Cf. Moranza v. State*, 913 S.W.2d 718, 726 (Tex. App.—Waco 1995, pet. ref'd) (highlighting evidence that defendant "was 'faking' his symptoms to fabricate an insanity defense" when concluding "that the jury's rejection of [the defendant]'s insanity defense" was not "so against the weight and preponderance of the evidence as to be manifestly unjust").

As set out above, although both Dr. Mauro and Dr. Fabian agreed that Cooper was likely legally insane at the time in question, there was conflicting evidence regarding what role methamphetamine or methamphetamine withdrawal may have played in reaching that mental state, and evidence was presented indicating that Cooper had taken methamphetamine before the incident. *Cf. Dominguez v. State*, 661 S.W.2d 759, 761-62 (Tex. App.—El Paso 1983, pet. ref'd) (noting that evidence depicted "a state of psychosis rising to the level of legal insanity" but that there was issue of whether defendant's mental condition "was triggered by substance abuse amounting to voluntary intoxication" and concluding that evidence "was sufficient to support a jury conclusion that continued use of the medication . . . constituted voluntary intoxication"); *see also Dana*, 420 S.W.3d at 166, 168 (explaining that use of methamphetamine "tended to rebut Dana's insanity defense" given testimony addressing effect that methamphetamine would have on defendant's condition). While recognizing that it was the jury's duty to evaluate the weight and credibility of the conflicting evidence, we conclude based on the evidence above that the jury's determination that Cooper failed to prove insanity is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Lantrip v. State*, 336 S.W.3d 343, 348 (Tex. App.—Texarkana 2011, no pet.); *see also Moranza*, 913 S.W.2d at 725-26 (affirming conviction and concluding that jury's rejection of insanity defense was not manifestly unjust despite defendant's diagnosis of paranoid schizophrenia and

9

despite expert testimony that defendant was legally insane given other evidence that was presented at trial). The presence of some evidence supporting Cooper's "affirmative defense does not render the factual sufficiency of the jury's" rejection of that defense "manifestly unjust, conscience-shocking, or clearly biased." *See Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015). Because the evidence is factually sufficient to support the jury's rejection of his insanity defense, the evidence is also necessarily legally sufficient. *See Reyes*, 480 S.W.3d at 73.[1]

For these reasons, we overrule Cooper's first three issues on appeal.

**Voluntary-Intoxication Instruction**

In his fourth issue on appeal, Cooper contends that there were errors in the abstract and application portions of the jury charge pertaining to the affirmative defense of insanity.

The relevant portion of the abstract section reads as follows:

> It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong. The term "mental disease or defect" does not include an

---

[1] As will be discussed more thoroughly in the next issue, Cooper contends that there was error in the jury charge because the abstract portion of the charge did not include an instruction regarding voluntary intoxication. Building on this premise, Cooper argues in his third issue that factual-sufficiency reviews are measured against the charge given and not a hypothetically correct charge. Accordingly, Cooper asserts that "the charge did not allow for . . . an implied finding that [his] insanity was caused by voluntary intoxication" and that, therefore, "any implied finding to that effect . . . would have to be overturned on a factual sufficiency review." However, the Court of Criminal Appeals has explained that factual-sufficiency challenges are addressed in light of a hypothetically correct jury charge. *See Wooley v. State*, 273 S.W.3d 260, 268 (Tex. Crim. App. 2008); *see also Smith v. State*, No. 05-03-01292-CR, 2004 WL 837878, at *1-2 (Tex. App.—Dallas Apr. 20, 2004, no pet.) (op., not designated for publication) (noting that defendant was challenging factual sufficiency of evidence supporting jury's rejection of defense and explaining that reviewing courts "measure the sufficiency of the evidence against a hypothetically correct charge"). Moreover, as will be discussed next, we conclude that there was no jury-charge error in this case.

abnormality manifested only by repeated or otherwise antisocial conduct.

You shall determine that a defendant is not guilty by reason of insanity if:

> (1) the prosecution has established beyond a reasonable doubt that the alleged conduct constituting the offense was committed; and

> (2) the defense has established by a preponderance of the evidence that the defendant was insane at the time of the alleged conduct.

After reaching a verdict, you shall determine and specify in the verdict whether the defendant is guilty, not guilty, or not guilty by reason of insanity.

Voluntary intoxication does not constitute a defense to the commission of a crime. "Intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

The application paragraphs for both offenses stated that if the jury believed beyond a reasonable doubt that Cooper committed the two offenses but also "believe[d] from the evidence presented by a preponderance of the evidence that the defendant was insane at the time of the offense due to a mental disease or defect, then you will find the defendant 'Not Guilty by Reason of Insanity' and so say by your verdict."

On appeal, Cooper contends that there were errors in the abstract and application portions of the charge because the charge did not include an instruction "on the burden of proof regarding voluntary intoxication as an exception to the affirmative defense of insanity." Further, Cooper argues that there was an additional error in the charge because the application portion of the charge did not reference voluntary intoxication or specify how voluntary intoxication could be applied in this case. Moreover, Cooper contends that these errors harmed him.

When addressing an issue regarding an alleged jury-charge error, appellate courts must first decide whether there is error before addressing whether the alleged error resulted in any harm. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). When determining if

11

there is error in a jury charge, "reviewing courts 'must examine the charge as a whole instead of a series of isolated and unrelated statements.'" *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)). If the court determines that there was an error, it then decides whether the error resulted in harm sufficient to warrant a reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If no objection is made to a jury charge, as in this case, courts will only reverse if a jury-charge error "is so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see also Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013) (setting out what constitutes egregious harm).

Initially, we note that the jury charge in this case provided general instructions directing the jury to "consider this charge as a whole" when deliberating and explaining that the State must prove each element of the offenses charged "beyond a reasonable doubt." Moreover, the voluntary-intoxication instruction and the instruction defining intoxication track the governing language from section 8.04 of the Penal Code. *See* Tex. Penal Code § 8.04(a), (d); *see also Valdes-Fuerte v. State*, 892 S.W.2d 103, 108-09 (Tex. App.—San Antonio 1994, no pet.) (overruling issue asserting that inclusion of instruction on voluntary intoxication was not supported by evidence and noting that instruction given tracked language from Penal Code).

Furthermore, the Penal Code does not assign a burden of proof regarding voluntary intoxication, *see* Tex. Penal Code § 8.04, which is consistent with the nature of the instruction. "[A] Section 8.04(a) instruction is appropriate if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions" and is designed to prevent a jury from being confused about whether a defendant's

12

intoxication could somehow excuse his actions. *See Sakil v. State*, 287 S.W.3d 23, 26-27 (Tex. Crim. App. 2009). "By instructing the jury that voluntary intoxication does not constitute a defense to assault," a trial court properly utilizes "the charge's function to actively prevent confusion." *Id.* at 28. Further, when rejecting arguments that a nearly identically worded voluntary-intoxication instruction relieved the State of the obligation of proving all elements beyond a reasonable doubt and approving the inclusion of that instruction, the Court of Criminal Appeals explained that, "[i]f anything, a voluntary-intoxication instruction acts to reaffirm the mental-state requirements, not delete them," by informing "the jury that the elements of the offense, including the requisite mental state, are *not* affected by any evidence of intoxication." *Id.*

In light of the jury charge's instruction that the State must prove the elements of the offenses beyond a reasonable doubt and the nature of a voluntary-intoxication instruction, we cannot agree that the trial court erred by failing to include a burden-of-proof instruction for the voluntary-intoxication instruction in the abstract portion of the charge. *Cf. Ramos v. State*, 991 S.W.2d 430, 434 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (addressing issue regarding omission of reasonable-doubt instruction in voluntary-intoxication instruction for mitigation purposes in punishment hearing and explaining that "[b]ecause section 8.04 does not state a burden, a trial court should not instruct a jury that the defendant has a particular burden to prove temporary insanity from voluntary intoxication").

Turning to Cooper's assertion that it was error not to reference voluntary intoxication in the application section or include a voluntary-intoxication instruction like the one in the abstract section, we note that "[t]he abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *See Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). "[I]f the application

13

paragraph 'necessarily and unambiguously' refers to another paragraph of the jury charge, then a conviction is authorized, and the trial judge need not *sua sponte* 'cut and paste' that definition into the application paragraph." *Vasquez*, 389 S.W.3d at 367 (quoting *Plata v. State*, 926 S.W.2d 300, 304 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)). "It is unnecessary to repeat every abstract definition in the application paragraph of the jury charge." *Holland v. State*, 249 S.W.3d 705, 709 (Tex. App.—Beaumont 2008, no pet.).

In this case, the abstract portion of the charge instructed the jury to consider the whole charge when making its deliberations, informed the jury that the State was obligated to prove every element of the offenses beyond a reasonable doubt, defined insanity and intoxication, and explained that voluntary intoxication is not a defense to the commission of the offenses. *See Redding v. State*, No. 01-14-00536-CR, 2015 WL 6081757, at *4-5 (Tex. App.—Houston [1st Dist.] Oct. 15, 2015, pet. ref'd) (mem. op., not designated for publication) (overruling issue asserting that application paragraph should have included voluntary-intoxication instruction where abstract portion of charge contained voluntary-intoxication instruction and where charge also instructed that State had to prove all elements beyond reasonable doubt and observing that case law supported conclusion "that a trial court does not err in failing to submit an application paragraph with a voluntary intoxication instruction").

Further, the beginning of the application portion of the charge references the abstract portion with an introductory phrase stating "Now bearing in mind the foregoing instructions" before directing the jury to determine whether Cooper committed the two offenses in question. *Cf. Collins v. State*, No. 03-15-00629-CR, 2016 WL 768447, at *5 (Tex. App.—Austin Feb. 26, 2016, pet. ref'd) (mem. op., not designated for publication) (concluding that

14

there was no jury-charge error stemming from absence of instruction on accomplice testimony in application section of charge, in part, where accomplice instruction was given in abstract section and where application section had "introductory phrase" referencing prior portions of jury charge). In addition, the application portion directed the jury to determine whether Cooper was insane when he committed the offenses. The statement in the application section directing the jury to consider whether Cooper "was insane at the time of the offense due to a mental disease or defect" was a reference to the full definition for insanity, including the voluntary-intoxication component, given in the abstract section. *Cf. Fountain v. State*, Nos. 05-11-00753-CR, 05-11-0797-CR, 2013 WL 1245725, at *3 (Tex. App.—Dallas Feb. 12, 2013, pet. ref'd) (op., not designated for publication) (determining that reference in application portion of charge to action "in violation of an order" under relevant statutes "clearly refers jurors to the full definition given above the application paragraph"). A reasonable jury would refer to the abstract definition of insanity without needing to have the portion regarding voluntary intoxication repeated in the application paragraph. *See id.* Accordingly, we cannot agree with Cooper that the trial court erred by failing to include a voluntary-intoxication instruction in the application section.

For all of these reasons, we overrule Cooper's fourth issue on appeal.

**Deadly Weapon**

In his fifth issue on appeal, Cooper asserts that the evidence was insufficient to prove that he used or exhibited a deadly weapon during the alleged aggravated assault. As support, Cooper notes that no expert testimony was presented regarding whether the knife was capable of causing serious bodily injury or death. Further, Cooper urges that the evidence did not establish that the knife was a deadly weapon because "[t]here was nothing showing [that he]

15

intentionally stabbed the victim or attempted to ward her off with the knife a second time." Moreover, Cooper asserts that Hardcastle did not testify regarding the depth of the puncture wound. For these reasons, Cooper argues that this Court should reverse his conviction for aggravated assault, reform the judgment "to show a conviction on the lesser included offense" of assault, and remand the case for a new punishment hearing.

For sufficiency challenges, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). The factfinder is "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence." *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.]

16

2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

Under the Penal Code, a deadly weapon is defined as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17). "An ordinary knife is not a deadly weapon per se; that is, it is not an object manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." *Ashcraft v. State*, No. 03-07-00237-CR, 2008 WL 480704, at *2 (Tex. App.—Austin Feb. 21, 2008, pet. ref'd) (mem. op., not designated for publication). But a knife may become "a deadly weapon if, in the manner of its use or intended use, it is capable of causing death or serious bodily injury." *Id.* Further, the Penal Code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition" and defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code § 1.07(a)(8), (46).

We note that "[e]xpert testimony is not required" to prove that a knife is a deadly weapon. *See Rivera v. State*, 271 S.W.3d 301, 304 (Tex. App.—San Antonio 2008, no pet.). Similarly, it "is not necessary" to admit the knife or provide a detailed description of the knife "when there is other evidence showing the knife was capable of inflicting serious bodily injury in the manner in which it was used." *Serna v. State*, No. 01-89-00168-CR, 1989 WL 141214, at *3 (Tex. App.—Houston [1st Dist.] Nov. 22, 1989, pet. ref'd) (op., not designated for publication). "[T]he injuries suffered by the victim can by themselves be a sufficient basis for inferring that a

deadly weapon was used." *Tucker v. State*, 274 S.W.3d 688, 691-92 (Tex. Crim. App. 2008); *see also Magana v. State*, 230 S.W.3d 411, 414 (Tex. App.—San Antonio 2007, pet. ref'd) (observing that "[w]hen no actual injury is sustained by the victim, the prosecution must introduce evidence of other factors to establish that the knife is a deadly weapon").

During the trial, Hardcastle explained that Cooper threatened her while they were in the car on the way to her house and held the knife at issue close to her face. Further, Hardcastle testified that Cooper stabbed her chest with a knife while pushing her, that she felt pain when she was injured, and that she was bleeding. When describing the injury, Hardcastle said that the stab wound was three inches long, that the knife went inside "a good amount," that the knife was "maybe two inches away from an artery" according to her doctors, and that she now has a scar that is an inch and a half long. *See Garcia v. State*, 17 S.W.3d 1, 5 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (determining that evidence was sufficient to support jury's finding that defendant used deadly weapon, in part, where victim had scar from stab wound, where victim bled profusely, and where stab wound was on victim's chest and close to spleen and lung); *Rodriguez v. State*, 857 S.W.2d 102, 107 (Tex. App.—Corpus Christi 1993, no pet.) (explaining in sufficiency analysis that rational trier of fact could find knife to have been deadly weapon where it was used to stab victim, where victim sustained wounds to his chest that were "one-half inch deep," where victim went to hospital for treatment, and where witness testified that "three-inch blade was capable . . . of causing serious bodily injury or death"). Further, Hardcastle related that she suffered through "[a] lot of pain" for a month or longer, that she could not lift anything over five pounds for three months, and that she wears clothes that cover her scar because she is self-conscious about it.

18

In addition, photos of the injury were admitted into evidence and showed that Hardcastle received multiple stitches to close the wound. *Cf. Morales v. State*, 633 S.W.2d 866, 868-69 (Tex. Crim. App. 1982) (explaining that photograph of victim's deep injury closed by stitches was sufficient to establish that deadly weapon was used); *Serna*, 1989 WL 141214, at *4 (noting that jury was able to see victim's scars and that officer described injuries at time they were inflicted when concluding that evidence was sufficient to conclude that weapons were deadly weapons). One photo indicated that the wound was approximately one inch long. Further, a photo of the knife was admitted into evidence and showed that the knife had a triangular point and serrated sides and that the knife had blood on the blade and down the handle. *Cf. Gross v. State*, No. 07-03-00484-CR, 2004 WL 1469418, at *1-2 (Tex. App.—Amarillo June 30, 2004, pet. ref'd) (mem. op., not designated for publication) (deciding that evidence was sufficient to show that knife was deadly weapon, in part, because evidence showed that knife "was not only sharply pointed but also serrated in part"). On the recording of her 911 call, Hardcastle explained that Cooper stabbed her heart and chest and that she was bleeding. The 911 operator told her to apply pressure to stop the bleeding.

Based on the evidence summarized above, the jury could have rationally concluded that the knife used in this case was a deadly weapon. *See Dana*, 420 S.W.3d at 169 (determining that evidence was sufficient to show that defendant used or exhibited deadly weapon during assault involving more than one victim when jury saw photos of injury to one of victims, when victim testified that his hand filled with blood while holding wound, when injury was four inches long, when victim went to hospital and underwent surgery, and when another victim received stitches to wound on face and had some hearing loss and wore eyepatch for two months); *Cook v. State*, 99 S.W.3d 310, 312-13, 316 (Tex. App.—Eastland 2003, no pet.)

(concluding that evidence was sufficient to establish that knife was deadly weapon where victim testified that defendant had knife, poked her, held knife to her throat, dragged knife down her back and arm, and where photos showed cuts that she sustained).

For these reasons, we overrule Cooper's fifth issue on appeal.

**Lesser-Included Offense**

In his sixth issue on appeal, Cooper contends that the trial court erred by failing to include in the jury charge an instruction regarding whether Cooper committed the lesser-included offense of assault. When presenting this issue on appeal, Cooper urges that conflicting evidence was presented at trial regarding whether he stabbed Hardcastle or was trying to push her away while holding a knife and notes that no medical expert provided any testimony regarding the nature of the wound that Hardcastle sustained. Cooper concedes that he did not request a lesser-included-offense instruction, but he contends that this Court should still consider whether he was egregiously harmed by the absence of the instruction.

The Court of Criminal Appeals has explained that "lesser-included instructions are like defensive issues" and that a trial court has "no duty to *sua sponte*" provide a lesser-included-offense instruction absent a request because decisions regarding whether to ask for those types of instructions often rely on trial strategy and tactics. *Tolbert v. State*, 306 S.W.3d 776, 780, 781 (Tex. Crim. App. 2010); *see also Robinson v. State*, No. 03-14-00407-CR, 2015 WL 4515128, at *8 (Tex. App.—Austin July 22, 2015, pet. ref'd) (mem. op., not designated for publication) (discussing how trial attorneys may decide not to ask for lesser-included instructions as part of "an all-or-nothing strategy"). In the absence of a request for a lesser-included-offense instruction, there is "no jury-charge 'error' to which *Almanza*'s egregious harm analysis would

20

apply." *Tolbert*, 306 S.W.3d at 782; *see also Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (noting that trial courts do not have "*sua sponte* duty to instruct the jury on all potential defensive issues, lesser-included offenses, or evidentiary issues").

In this case, Cooper did not request an instruction on the lesser-included offense of assault, and the trial court was not obligated to sua sponte include in the jury charge a lesser-included-offense instruction "because such offenses are not 'applicable to the case' absent a request by the defense for its inclusion in the jury charge." *See Teague v. State*, No. 03-10-00434-CR, 2012 WL 512661, at *5 (Tex. App.—Austin Feb. 16, 2012, pet. ref'd) (mem. op., not designated for publication) (quoting *Tolbert*, 306 S.W.3d at 781). Consequently, the omission does not constitute error and is not subject to review for egregious harm under *Almanza*, and Cooper "cannot complain on appeal about the trial [court]'s failure to include a lesser-included-offense instruction that he did not preserve by request or objection; 'he has procedurally defaulted any such complaint.'" *See Turner v. State*, No. 03-12-00285-CR, 2014 WL 3893018, at *6, *7 (Tex. App.—Austin Aug. 8, 2014, pet. ref'd) (mem. op., not designated for publication) (quoting *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013)). To the extent that Cooper suggests that we should disregard the analysis from the Court of Criminal Appeals and analyze whether the trial court erred by omitting a lesser-included-offense instruction, "[w]e cannot adopt a position plainly rejected by the majority of a higher court." *See Teague*, 2012 WL 512661, at *5.

For these reasons, we overrule Cooper's sixth issue on appeal.

**Jury Argument**

In his final issue on appeal, Cooper argues that the State made improper jury arguments that require a reversal in this case. When presenting this issue, Cooper points to the

following exchange that occurred during the State's closing argument:

[State]: And the hypothetical I was kind of going over with Dr. Mauro . . . is – someone in his position is driving down the road, and they have schizophrenia. They believe someone is following them, is out to get them, chasing after them with guns, trying to run them off the road. . . . He gets out of the car, fires at the individual who he believes is chasing after him, trying to kill him, and kills the individual, he would be entitled to the insanity defense, because in his mental disease and defective mind he believes that person is out to get him. He is basically justified in using self-defense to protect himself from this person out to get him. However, in firing at this individual, if he shoots an innocent bystander, insanity defense does not extend to that innocent bystander because that is reckless conduct.

[Cooper]: Judge, I am going to object. It's a misstatement of the law.

[Trial Court]: That I'll sustain.

[State]: The point is no one ever delved into whether or not he understood his conduct was wrong –

[Trial Court]: And I am going to allow you to repeat that, if you want to, Counsel. The law will be given to you by the Court in the charge. Use the charge to determine what the law is in this case.

You may proceed.

[State]: What you're supposed to look at is: Did he know his actions were wrong in Count I, when he stabbed . . . Hardcastle? And no one ever asked him that question. It's all in relation to him trying to protect himself in relation to intentional and knowing act, but no one ever asked him whether he knew it was wrong to recklessly wield a knife. So that's why I believe the insanity defense doesn't apply here.

In light of the above, Cooper contends that the State improperly argued that insanity could never be a defense to an offense involving reckless conduct and, therefore, misstated the law. *See* Tex. Penal Code §§ 6.03(c), 8.01.

"To preserve error regarding improper jury argument for appellate review, a defendant must object and pursue his objection to an adverse ruling." *Johnson v. State*, No. 03-

22

12-00006-CR, 2012 WL 1582236, at *7 (Tex. App.—Austin May 4, 2012, no pet.) (mem. op., not designated for publication) (citing *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010); Tex. R. App. P. 33.1(a)). "A defendant must contemporaneously object to the statement, request an instruction that the jury disregard the statement if the objection is sustained, and move for a mistrial if an instruction to disregard is given." *Id.* (citing *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993)). "[E]ven if an error" stemming from improper jury argument "could not be cured" by giving an instruction to the jury, the defendant would still be required "to object and request a mistrial." *Mathis v. State*, 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002). If a defendant fails to object to jury argument or fails to pursue an adverse ruling on his objection to the argument, he waives his right to complain about the allegedly improper jury argument on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

Although Cooper objected to a portion of the State's argument on the ground that the State misstated the applicable law, the trial court sustained that objection, and Cooper did not ask the trial court to instruct the jury to disregard the State's argument or make any subsequent objections to the State's argument following the trial court's ruling. Further, the State's allegedly improper argument was not so extreme that an instruction to disregard would not have cured the alleged error. *Cf. Veloz v. State*, No. 01-08-00406-CR, 2010 WL 2431059, at *5 (Tex. App.—Houston [1st Dist.] June 17, 2010, pet. ref'd) (mem. op., not designated for publication) (noting that there is presumption that juries follow instructions "to disregard prosecutorial misstatements of the law"). Accordingly, we must conclude that Cooper did not preserve his complaints for appellate consideration. *See Canada v. State*, 547 S.W.3d 4, 22 (Tex. App.—Austin 2017, no pet.).

For these reasons, we overrule Cooper's seventh issue on appeal.

## CONCLUSION

Having overruled all of Cooper's issues on appeal, we affirm the trial court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed:   September 23, 2020

Do Not Publish