

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00563-CR

COLETTE REYES                                                        APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1181465D

----------

## OPINION

----------

A jury found Appellant Colette Reyes guilty of murder and assessed her punishment at forty-five years' imprisonment in the penitentiary. She brings four points in her appeal. First, she asserts the jury verdict against her affirmative defense of insanity was against the great weight and preponderance of the evidence. Second, she contends the evidence is insufficient to support her conviction because the State failed to prove mens rea. Third, she argues that

the trial court abused its discretion by admitting an audiotape of the offense because its probative value was substantially outweighed by the danger of unfair prejudice. Finally, she maintains the trial court erred by denying her motion for mistrial after the prosecutor made a direct comment on her right not to testify during final arguments. We affirm.

## Background

Appellant's husband moved out of their home on October 17, 2009, and she was aware he wanted a divorce. Appellant was very agitated about the divorce, worried about her financial survival, and was even concerned that she might become homeless. She was the beneficiary of her husband's $250,000 life insurance policy.

On November 22, 2009, her husband came by their home to collect some personal items. He planned to file a divorce petition the next day. While at the house, he telephoned their daughter to come and help him. When their daughter arrived at the house, she found her father on the garage floor with a pool of blood around his head, so she called 911. When the police arrived, they determined Appellant's husband had a gunshot wound. Appellant's husband died from a gunshot wound to the head. Appellant told one of the responding police officers that she had shot her husband and had placed the gun beside him. Thereafter, on December 30, 2009, Appellant tried to collect on her husband's $250,000 life insurance policy.

2

In the indictment, the State alleged that Appellant intentionally or knowingly caused the death of her husband by shooting him with a firearm, and in a second paragraph, it alleged that with the intent to cause serious bodily injury to her husband, Appellant shot him with a firearm, thereby committing an act clearly dangerous to human life and causing his death. The State alleged alternate means of committing the offense of murder. Tex. Penal Code Ann. § 19.02(b)(1)–(2) (West 2011). The trial court charged the jury on both paragraphs. The trial court also charged the jury on the affirmative defense of insanity, that is, that Appellant, as a result of a severe mental disease or defect, did not know that her conduct was wrong. The jury found her guilty as charged in the indictment and later assessed her punishment at forty-five years' confinement.

**Sufficiency of the Evidence to Support the Affirmative Defense**

In Appellant's first point, she argues the verdict was improper because she did not know her conduct was wrong. Appellant maintains that she met her burden of proof to show that she was insane at the time of the offense.

It is an affirmative defense to prosecution that, at the time of the charged conduct, the defendant did not know that her conduct was wrong as a result of a severe mental disease or defect. Tex. Penal Code Ann. § 8.01(a) (West 2011). The defendant has the burden to prove her affirmative defense by a preponderance of the evidence. Tex. Penal Code Ann. § 2.04(d) (West 2011).

3

The *Jackson v. Virginia* constitutional standard of review that applies to the elements of an offense that the State must prove beyond a reasonable doubt does not apply to the elements of an affirmative defense that a defendant must prove by a preponderance of the evidence. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979)). Appellate courts apply, instead, the traditional civil standards of review. *Id.* Criminal defendants may raise a factual sufficiency challenge to a jury's adverse finding on an affirmative defense. *Id.* at 670. However, Appellant does not specify whether she is attacking the legal or factual sufficiency of the evidence. Affirmative defenses may be challenged for both legal and factual sufficiency. *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015). Evidence that is factually sufficient is necessarily legally sufficient. *See Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 485 (Tex. App.—Fort Worth 2004, no pet.). Accordingly, we will address the factual sufficiency of the evidence first. If Appellant loses on that ground, she necessarily would lose on legal sufficiency as well.[1]

When asserting a factual sufficiency challenge, a defendant is arguing that considering the entire body of evidence, the jury's adverse finding on her affirmative defense was so against the great weight and preponderance of the

---

[1]A legal sufficiency challenge requires the defendant to show on appeal that the evidence conclusively proves her affirmative defense and that no reasonable finder of fact was free to think otherwise. *See Butcher*, 454 S.W.3d at 20 (citing *Matlock*, 392 S.W.3d at 670).

4

evidence as to be manifestly unjust. *Matlock*, 392 S.W.3d at 671. The argument is that the defendant has offered so much evidence in support of her affirmative defense claim and that the State has offered so little evidence rebutting her defense that the jury's rejection of her affirmative defense is against the great weight and preponderance of the evidence. *Id.* at 670 n.29. Put another way, the defendant's evidence is more than sufficient to support her affirmative defense while the State's evidence is insufficient to rebut it. *Id.* When conducting a factual sufficiency review of a rejected affirmative defense, an appellate court must view the entirety of the evidence in a neutral light without usurping the jury's function to assess the weight and credibility of the witnesses' testimony by substituting its own judgment. *Id.* at 671. Where the parties present conflicting evidence on the issue of insanity, determinations regarding the weight and credibility of that evidence should be resolved by the finder of fact, and the reviewing court should defer to those decisions because the finder of fact had the benefit of observing the witnesses' actions and demeanor. *Lantrip v. State*, 336 S.W.3d 343, 348 (Tex. App.—Texarkana 2011, no pet.). An appellate court may sustain an appellant's factual insufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Matlock*, 392 S.W.3d at 671.

5

A criminal defendant is presumed to be sane and to intend the natural consequences of her acts absent proof by a preponderance of the evidence that she is insane. *Ruffin v. State*, 270 S.W.3d 586, 591–92 (Tex. Crim. App. 2008). The test for determining insanity is whether the defendant, at the time she committed the offense, did not know that her conduct was wrong or illegal due to a severe mental disease or defect. *Id.* at 592.

There was evidence suggesting Appellant had mental health issues. M.C., Appellant's sister, testified that Appellant had mental health issues and that Appellant's husband wanted her institutionalized. Appellant's daughter testified that Appellant would act oddly in conflict situations. She explained:

> Whenever we would get into any kind of verbal conflict, she would begin singing, as you saw, or heard. She'd begin singing in Creole, you know, praise Jesus, and then adding her own lyrics about how God would curse me and God would curse [my father] and my sister for what they've done to her. And she would use Praise Jesus, curse them.

Appellant was diagnosed as far back as 1994 with paranoid schizophrenia, schizoaffective disorder, and depression and anxiety with psychotic features. Dr. Emily Fallis, a clinical psychologist, testified that Appellant suffered from a schizoaffective disorder and said she would not describe Appellant's actions of killing her husband while being recorded on an audiotape as normal. Dr. Fallis, however, was not able to say that Appellant did not know her conduct was wrong, and she admitted that nothing on the audiotape showed that Appellant did not know her conduct was wrong. After the police arrested Appellant and took

6

her to jail, she engaged in bizarre behavior, such as stripping off her clothing repeatedly.[2]

There was much evidence showing that Appellant was sane. On October 17, 2009, when Appellant's husband and daughter moved out, Appellant had hidden her husband's handguns and would not turn them over to her daughter notwithstanding being asked several times. Even before Appellant's husband and daughter had moved out, Appellant's husband had looked for his guns but could not find them. Appellant's daughter said she asked for the guns again on the Friday (November 20) before the murder, but Appellant simply told her that she did not need them right then and that she could get them on another day. Appellant admitted shooting her husband to her sister and to a police officer. When the police arrived at the scene of the offense, Appellant responded to questions and complied with the officers' instructions, albeit slowly at first. After

---

[2]However, when asked if it was normal behavior for someone in good mental health to strip in front of strangers, Dr. Fallis said:

> It is not typical in my experience working both in mental health hospitals, looking at records, and also having worked in prison settings, including a federal jail and a county jail after somebody is arrested. I see that sometimes where people will disrobe, take their clothes off and remain unclothed when they have more primitive forms of psychosis. That's what I associate that with, is people who are oblivious to other people, what other people may think of them, what other people may see. They are just not within our realm of reality.

In other words, Appellant's conduct in jail was atypical for both those persons who were mentally healthy and those who were mentally ill.

7

Appellant's husband's death, she contacted his life insurance company to seek a payout on his policy. D.W., a neighbor who saw Appellant frequently because their daughters were friends, testified that she thought Appellant did not have any kind of mental defect. Appellant's daughter testified that Appellant knew right from wrong on the day Appellant shot and killed her father. Appellant's daughter thought it was premeditated because Appellant hid the guns.

Dr. Jack Randall (Randy) Price, a forensic psychologist and neuropsychologist, evaluated the police records, the audiotape, Appellant's medical and personnel records, the competency report, and Dr. Fallis's files and notes; he concluded that Appellant did not suffer from a severe mental disease or defect "at the time of the conduct for which she is charged." Dr. Price also evaluated the notes from Appellant's four counseling sessions right before the shooting, and he testified that Appellant's "presentation to them was not one of a person with psychotic symptoms," but was, instead, one of a person angry and depressed about her marriage and her husband's affair and anxious about her future, especially her financial future. Dr. Price described some of Appellant's self-reporting as "fantastical" and, in his opinion, false. He added, "Individuals with a borderline personality disorder can be very deceitful and manipulative, and those were factors that I considered." Dr. Price testified that in the time period between 2005 and the offense, there were no mental health professionals that made notes about a severe mental health disease or disorder such as

8

schizophrenia, schizoaffective disorder, bipolar disorder, or any other kind of psychotic symptoms. Regarding the offense itself, Dr. Price said,

> There wasn't any, at any time, in the records that I know of or to anybody, has she given a version of the offense that would indicate that she didn't know it was wrong, like the kind of things that some of us hear in these cases: I heard a voice. It was God. God told me to kill him because he was the devil or because if I didn't, the world would end, or some delusionally-based auditory hallucination, something abnormal. At any time in the records or that I know of in this case, there has not been an explanation or a version that she didn't know it was wrong.

Regarding the audiotape, Dr. Price said it did not indicate that Appellant was psychotic when she shot and killed her husband. He said,

> On the day of the offense, of course, she told her sister, "I just killed him. I just killed him." That would indicate to me that she knew it was wrong. There wasn't any other explanation on the audiotape. When the police first arrived and asked who did it, she said, "I did it." And she also told them that her name was [A.B.], which is the name of the female with whom the victim was involved. I didn't see that as being a psychotic out of touch with reality or thinking that she was [A.B.] I thought it was a—you know, it was at least a spiteful, if not an attempt to be misleading to the police.[3]

_____

[3]On the audiotape, after Appellant told her sister that she had just killed her husband, and after her sister asked Appellant, "What do you mean you just killed him[?]" Appellant answered several times, "He had a gun." When Appellant's sister then asked where the gun was, Appellant responded, "Here's the gun[.] [H]ere's the gun[.] [H]e had a gun[.] I killed him[.]" Nothing else in the audiotape suggested Appellant's husband had a gun, and the testimony at trial showed that Appellant's husband could not find his guns because Appellant had taken them and refused to return them. Although Appellant's initial statements appear to be efforts to set up the defense of self-defense, all the other evidence refuted that scenario. Dr. Price had addressed this portion of the audio earlier in his testimony and had discounted it because there was no evidence of a second gun.

9

Dr. Price concluded that Appellant knew her conduct was wrong when she shot and killed her husband. Because Appellant did not cooperate during his face-to-face evaluation with her, Dr. Price said he arrived at his opinion regarding her sanity based upon the records he analyzed.

Based upon the above evidence, while recognizing that it was the jury's duty to evaluate the weight and credibility of the conflicting evidence, we hold that the jury's determination that Appellant failed to prove insanity by a preponderance of the evidence is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Lantrip*, 336 S.W.3d at 348; *Moranza v. State*, 913 S.W.2d 718, 725–26 (Tex. App.—Waco 1995, pet. ref'd) (upholding jury's rejection of insanity defense as not manifestly unjust despite defendant's diagnosis of paranoid schizophrenia and despite expert testimony that defendant was legally insane). The presence of some evidence supporting a defendant's affirmative defense does not render the jury's rejection of that defense manifestly unjust or factually insufficient. *See Butcher*, 454 S.W.3d at 20. Because we find the evidence factually sufficient, we necessarily find the evidence legally sufficient. *See Citizens Nat'l Bank*, 142 S.W.3d at 485. We overrule Appellant's first point.

### Sufficiency of the Evidence to Support the Conviction

In Appellant's second point, she contends the evidence is insufficient to support her conviction because it fails to establish that she possessed the mental

capacity to commit the offense. Appellant argues that she lacked the mens rea to commit the offense.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences

11

in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

Physical and mental diseases or defects may affect a person's perceptions just as much as they may affect a person's rational understanding of her conduct or her capacity to make moral judgments. *See Ruffin*, 270 S.W.3d at 593. With that in mind, a defendant may offer evidence of a mental disease or defect to rebut or disprove her culpable mens rea. *Id.* at 594; *see id.* at 590–97 (holding that independent of any insanity defense, evidence of mental disease or defect may be offered on issue of mens rea).

A person commits murder if she intentionally or knowingly causes the death of an individual or when she, with the intent to cause serious bodily injury, commits an act clearly dangerous to human life and thereby causes death. Tex. Penal Code Ann. § 19.02(b)(1)–(2). A person acts intentionally when it is her conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code Ann. § 6.03(a) (West 2011). A person acts knowingly when she is aware that her conduct is reasonably certain to cause the result. Tex. Penal Code Ann. § 6.03(b) (West 2011).

Direct evidence of intent is not required. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). A jury may infer the intent to kill from any evidence that it believes proves the existence of that intent, including the accused's use of a deadly weapon. *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 938 (2004). A jury may also infer intent or knowledge from

12

circumstantial evidence such as acts, words, and the conduct of the defendant. *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) ("Because '[o]ne's acts are generally reliable circumstantial evidence of one's intent,' the jury could reasonably infer that [the defendant] intended to do exactly what he did—to inflict bodily injury on [the complainant]." (quoting *Rodriguez v. State*, 646 S.W.2d 524, 527 (Tex. App.—Houston [1st Dist.] 1982, no pet.))).

Appellant was aware her husband wanted a divorce and was afraid about her financial survival. She was the beneficiary of her husband's $250,000 life insurance policy. When asked, Appellant refused to turn her husband's handguns over to their daughter. Appellant shot her husband in the head at an intermediate range and killed him. Appellant then tried to collect on her husband's $250,000 life insurance policy. There was testimony that Appellant did not suffer from a severe mental disease or defect and that she knew her conduct was wrong when she shot and killed her husband. This was more than enough evidence from which the jury could have concluded Appellant murdered her husband for the life insurance policy rather than allowing the divorce to proceed and facing an uncertain financial future. Although there was evidence of mental illness, the jury was free to disbelieve any testimony that she lacked sufficient mental capacity to have had the requisite mens rea. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) ("The jury may choose to believe some testimony and disbelieve other testimony."). We overrule Appellant's second point.

**The Admission of the Tape Recording**

In Appellant's third point, she complains about the admission of State's Exhibit 45B—the audiotape recording of Appellant shooting and killing her husband. She argues that the State failed to establish the chain of custody and that the trial court did not conduct a balancing test as required by rule 403 of the Texas Rules of Evidence. She also maintains that the trial court's ruling on the balancing test must be measured against the relevant criteria to determine whether it was arbitrary and capricious.

To the extent Appellant complains about the chain of custody, that was not Appellant's objection at trial. An error presented on appeal must be the same as the objection raised at trial or nothing is preserved for appellate review. *See* Tex. R. App. P. 33.1(a); *Allridge v. State*, 762 S.W.2d 146, 157 (Tex. Crim. App. 1988), *cert. denied*, 489 U.S. 1040 (1989). We overrule that portion of Appellant's third point.

There is no requirement that the trial court place on the record that it has conducted and completed the balancing test in its own mind. *Nolen v. State*, 872 S.W.2d 807, 812 (Tex. App.—Fort Worth 1994), *pet. ref'd*, 897 S.W.2d 789 (Tex. Crim. App. 1995). The fact that the judge made a proper balancing test can be implied from the record. *Id.* Although the record does not contain a discussion by the court before it overruled Appellant's objection, we presume it performed the mandatory test. *Id.* We overrule that portion of Appellant's third point.

A trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. "Unfair prejudice" refers to evidence that has an undue tendency to suggest a decision on an improper basis, such as an emotional one. *Torres v. State*, 794 S.W.2d 596, 600 (Tex. App.—Austin 1990, no pet.). Rule 403 authorizes a trial court to exclude relevant evidence when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value. *See Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

A trial court's ruling on a rule 403 objection is reviewed under an abuse of discretion standard. *See State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). The test for whether there was an abuse of discretion is whether the action was arbitrary or unreasonable. *Id.* An appellate court should not reverse the trial court's ruling as long as it is within the "zone of reasonable disagreement." *Id.* at 440 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991)).

The audiotape provided the jury an aural account of the shooting. It had tremendous probative value showing the manner and means of the complainant's death. *See Long v. State*, 823 S.W.2d 259, 271 n.18 (Tex. Crim. App. 1991), *cert. denied*, 505 U.S. 1224 (1992). Additionally, both doctors who assessed whether Appellant was legally sane when she shot and killed her husband relied on the audiotape. Because Appellant raised the insanity defense, the audiotape was a key piece of evidence regarding her mental state at the time

15

of the offense. *See Ruffin*, 270 S.W.3d at 587–88. Conversely, Appellant does not articulate how the audiotape was unfairly prejudicial. By comparison, gruesome crime scene photographs, because they depict nothing more than the reality of the crime committed, have survived rule 403 objections. *See Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995). The audiotape would not impress the jury in some sort of irrational but nevertheless indelible way; just the contrary, it was highly relevant on what precisely happened and on Appellant's mental state when it happened. *See Mozon*, 991 S.W.2d at 847. Appellant does not complain about any undue delay, and the audiotape, far from distracting the jury from consideration of the indicted offense, would force the jury to focus on it. *See id.* A recording of the offense, even just an audio recording, would not confuse the issues, mislead the jury, or constitute needless cumulative evidence. Tex. R. Evid. 403. The recording served to clarify the events leading up to the shooting and allowed the jury to put the other testimony into the context of the recording. We hold the trial court did not err by admitting the audiotape over Appellant's rule 403 objection and overrule her third point.

### Comment on Failure to Testify

In Appellant's fourth point, she maintains that the trial court erred by overruling her motion for mistrial when the prosecutor made a direct comment on her right not to testify.

During the State's final arguments, the following occurred:

[THE PROSECUTOR]:  You've listened to the tape.  You just have to wade through it.  You know, eventually people are gonna realize what's going on, and they'll realize that you're a fraud and a liar and a backslider, and you're not a nice person.  And that you really—[4]

THE DEFENDANT:  You were in orgies.  That's why I got that tape.  You were in—

THE COURT:  Ms. Reyes.

THE DEFENDANT:  —in orgies with these women and men.

[THE PROSECUTOR]:  And I would suggest—

THE DEFENDANT:  You wanted it.

[THE PROSECUTOR]:  And I would suggest to you—

THE DEFENDANT:  I'm a Christian woman.

[THE PROSECUTOR]:  You notice how she pipes up when something is said that she doesn't like?  She knows exactly what she's doing, and she knew exactly what she was doing that night, ladies and gentlemen.

And it goes on, and that you're really—and then that part is unintelligible.  And all you've got to have is you and your siblings and your mom, and as he gets ready to continue talking, she shoots him in the head.

---

[4]The prosecutor is quoting from a transcription of the audio.  Appellant's husband's last words before Appellant shot him were:

Just have to wade through it[.]  [Y]ou know[,] eventually people are gonna . . . realize what's going on . . . and uh . . . they'll realize that you're a fraud and a liar . . . and a back slider . . . and you're not a nice person . . . and that you really. . . and that (unintelligible) . . . and all you're gonna have is you . . . and your siblings . . . and your mom . . . .

THE DEFENDANT:  Hallelu[j]ah (unintelligible language)—

[THE PROSECUTOR]:  She knows what's going on.

THE DEFENDANT:  Jesus.  Hallelu[j]ah.

[THE PROSECUTOR]:  And you will notice when I said that she shot him in the head, that's when she screamed "hallelujah."

[DEFENSE COUNSEL]:  Most respectfully, I have to make an objection to that.  I can't control my client's outburst.  That's a direct strike over the shoulder of my client regarding her right not to testify.  That's improper argument, and he knows that.

THE DEFENDANT:  (Unintelligible language).

THE COURT:  Sustained.

[DEFENSE COUNSEL]:  He knows that.

Judge, therefore, based on that comment of the prosecutor, I have to, as a matter of law, ask for a mistrial.

THE COURT:  That's denied.

We disagree with Appellant's premise that the prosecutor commented on her failure to testify.  Appellant made outbursts during trial, and the prosecutor commented on those.  The court of criminal appeals has written that it saw no reason to treat trial outbursts by a defendant any differently than other evidence offered at trial.  *See Johnson v. State*, 583 S.W.2d 399, 409 (Tex. Crim. App. [Panel Op.] 1979).  The court held that a prosecutor "may properly, within reason, comment on that evidence."  *Id.*  We hold that the prosecutor's comments were reasonable responses to Appellant's outbursts; therefore, the trial court did not err by denying her motion for mistrial.  We overrule Appellant's fourth point.

18

## Conclusion

Having overruled all of Appellant's points, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: GARDNER, MEIER, and GABRIEL, JJ.

GABRIEL, J., concurs without opinion.

PUBLISH

DELIVERED: November 12, 2015

19