

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00190-CR

———————————————————

IRVING WILLIAMS, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1426549D

Before Gabriel, Kerr, and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Irving Williams challenges the sufficiency of the evidence to support his conviction for evading arrest using an automobile. We affirm as modified.

### I.    BACKGROUND

Around 1:00 a.m. on the morning of August 21, 2015, Sergeant Charles Brown was on patrol, driving a marked police car. As he approached an intersection, he saw a car drive through a red light. The car was moving fast, and Sergeant Brown sped up to overtake it. When Sergeant Brown caught up to the car—a white Honda—he made note of its license plate and watched as the Honda ran another red light.

Sergeant Brown activated his overhead lights, and the Honda pulled into the parking lot of a Kohl's. The driver of the Honda, it turned out, was helping friends who had run out of gas in the Kohl's parking lot; he handed a gallon of gas to his friends and got out of the car to talk to Sergeant Brown. The driver handed Sergeant Brown a Texas identification card rather than a driver's license, and Sergeant Brown checked the picture on the card to verify that the driver was the same person.

According to Sergeant Brown, the driver stated that he did not have auto insurance and that he was in a hurry to help his friends. Sergeant Brown went back to his police car to run a check on the identification card. The driver of the Honda then got back into his vehicle and began driving rapidly through the parking lot. Sergeant Brown testified that at first, he "didn't know what was going on" and wondered if the driver "maybe . . . thought he was free to go." So Sergeant Brown followed the Honda

2

closely through the lot with his lights activated and sounded his siren twice. The driver did not slow and instead ran three stop signs before veering out of the lot and onto the road. When the Honda sped off, Sergeant Brown broke his pursuit, reasoning that he already had the driver's identification card.

Sergeant Brown testified that as he and other officers investigated the case that night, they learned where Appellant reportedly lived. The officers arrived at the address and saw a white Honda with the same license plate as the vehicle that Sergeant Brown had stopped earlier, and the hood of the vehicle was still hot. Officers knocked on the door of the residence, but no one answered. Appellant was later apprehended.

At trial, Sergeant Brown identified Appellant as the driver. The identification card was entered into evidence, and it bore Appellant's name and details. The State also offered dashboard-camera video of the encounter, which informs our recitation of the facts.

After the close of the evidence, the jury found Appellant guilty of evading arrest using a motor vehicle, a third-degree felony. *See* Tex. Penal Code Ann. § 38.04(a), (b)(2)(A); *Adetomiwa v. State*, 421 S.W.3d 922, 927 (Tex. App.—Fort Worth 2014, no pet.). Appellant pleaded true to an enhancement paragraph reflecting that he had two prior felony convictions, one committed after the other became final. *See* Tex. Penal Code Ann. § 12.42(d). The trial court sentenced Appellant to twenty-five years' confinement, the statutory minimum for the enhanced felony. *See id.*

## II. DISCUSSION

In one point of error on appeal, Appellant contests the sufficiency of the evidence to support his conviction. To begin, he submits that the evidence is insufficient to prove his identity as the person who fled from police on the night in question. Appellant points to circumstances that tend to weaken Sergeant Brown's identification, foremost among them the passage of time. According to Appellant, the four years that elapsed between the date of the offense and the time of trial render the officer's in-court identification inherently unreliable.

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a

4

sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

On cross-examination, Appellant drew out several circumstances that tended to undercut Sergeant Brown's testimony identifying Appellant as the driver of the Honda. In his testimony, Sergeant Brown admitted that the last time he was trained in identification procedures was 2005, ten years before the traffic stop in question. Sergeant Brown testified that in the four years that had passed since the traffic stop, he had conducted hundreds of similar stops. Sergeant Brown also conceded that he could not describe the two other people who were present in the Kohl's parking lot that night. Appellant noted, and Sergeant Brown agreed, that there was no fingerprint evidence connecting Appellant to the offense, that it was dark outside, and that there was no body-camera video that might have identified the driver more clearly. Finally, as Sergeant Brown admitted, he had experienced situations wherein a person tried to pass off another similar-looking person's identification card as his own. On appeal, Appellant contends that in light of the circumstances that undermined Sergeant Brown's testimony—especially the passage of time—it was irrational for the jury to believe Sergeant Brown's identification of Appellant.

Still, as the exclusive judge of the weight and credibility of the evidence concerning identity, the jury could have placed credence in the proof that pointed to

Appellant as the person who evaded arrest. Dashboard-camera video showed a man matching Appellant's description emerging from the Honda's driver-side door.[1] The identification card that the driver handed to Sergeant Brown matched Appellant's details. Based on Sergeant Brown's face-to-face discussion with the driver, Sergeant Brown concluded that Appellant was the same man pictured on the identification card, and the card was introduced into evidence, allowing the jury to make its own assessment.[2] In court, Sergeant Brown identified Appellant as the driver, and he testified that despite the passage of time, he was 100% confident in that testimony. His certainty, he said, was due to the unusual facts of the case (he had never seen someone provide an identification card, only to drive away) and also due to Appellant's distinct resemblance to American film director Spike Lee, both of which made Appellant stand out in Sergeant Brown's memory. And on the night of the offense, outside of a residence where Appellant reportedly lived, Sergeant Brown found a white Honda with a license plate matching the car he had stopped earlier, the hood still warm from recent

---

[1] *Walsh v. State*, No. 06-15-00059-CR, 2015 WL 8477273, at *4 (Tex. App.—Texarkana Dec. 10, 2015, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient to establish identity, in part because dashboard-camera video showed a man resembling appellant emerge from driver-side door of vehicle that was used to evade arrest).

[2] *See Castilla v. State*, 374 S.W.3d 537, 540 (Tex. App.—San Antonio 2012, pet. ref'd) (holding evidence sufficient to establish identity in an evading-arrest case based on an officer's identification of appellant and also on the Texas identification card that was left behind after an attempted detention).

use.[3] When viewed in the light most favorable to the verdict, the cumulative force of this evidence is sufficient to establish Appellant's identity as the man who evaded arrest in the white Honda. *See Murray*, 457 S.W.3d at 448.

Next, Appellant contends that even if the proof is sufficient to show identity, the evidence is nonetheless insufficient to prove that Appellant knew when he drove away that Sergeant Brown was still attempting to detain him. In support of this point, Appellant offers a creative discussion of how he might have perceived the circumstances of the traffic stop. He says, for example, that when Sergeant Brown kept his overhead lights on throughout the encounter, Appellant might have interpreted the lights as a safety measure rather than an indication that he was being detained. According to Appellant, when Sergeant Brown took his identification card and walked back to the police car, Appellant might have interpreted this as a signal that he was free to go. And Appellant notes that there was no direct testimony to show that as he drove off, he saw Sergeant Brown chasing him or heard the sirens that Sergeant Brown sounded. Appellant contends that the evidence is therefore insufficient to prove his awareness of the attempted detention.

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain

---

[3] *See Woolard v. State*, No. 02-19-00162-CR, 2020 WL 1466313, at *2 (Tex. App.—Fort Worth Mar. 26, 2020, no pet.) (mem. op., not designated for publication) (holding the evidence sufficient to show identity, relying on proof that associated the appellant with the vehicle that was used to evade arrest).

him. Tex. Penal Code Ann. § 38.04(a). That offense is a third-degree felony if the actor uses a vehicle while in flight. *See id.* § 38.04(b)(2)(A); *Adetomiwa*, 421 S.W.3d at 927. Essentially, a person commits a crime under Section 38.04 if he knows a police officer is attempting to arrest or detain him but nevertheless refuses to yield to a lawful show of authority. *Perry v. State*, No. 02-19-00262-CR, 2020 WL 479590, at *4 (Tex. App.—Fort Worth Jan. 30, 2020, pet. ref'd) (mem. op., not designated for publication). A jury may infer knowledge from circumstantial evidence, such as the acts, words, and conduct of the defendant. *Reyes v. State*, 480 S.W.3d 70, 77 (Tex. App.—Fort Worth 2015, pet. ref'd).

According to Appellant's interpretation of the record, the evidence justifies an inference that he was not aware of Sergeant Brown's continuing efforts to detain him. However, we presume that the factfinder rejected that competing inference, and we defer to the jury's determination that Appellant was aware of the attempted detention. *See Febus v. State*, 542 S.W.3d 568, 572, 575 (Tex. Crim. App. 2018). The evidence firmly supports that inference of awareness; the record is replete with circumstantial evidence indicating Appellant's cognizance that he was not free to leave and that Sergeant Brown was still attempting to detain him as he drove away:

- After Appellant ran multiple red lights, Sergeant Brown did not turn off his overhead lights during the traffic stop or the ensuing chase.[4]

---

[4]*See Easter v. State*, No. 05-19-00398-CR, 2020 WL 3424950, at *2 (Tex. App.—Dallas June 23, 2020, no pet.) (mem. op., not designated for publication) ("Evidence

8

- Sergeant Brown recalled that after he initiated the stop, he told Appellant "to get back in the car or to stop where he was."[5]

- Appellant then admitted that he did not have insurance,[6] made excuses for running the red lights,[7] and was able to produce only an identification card rather than a driver's license,[8] all of which provided a motive to flee.[9]

---

that a peace officer is asserting authority and attempting to arrest or detain an individual includes the use of emergency lights and sirens.").

[5] *See Powell v. State*, No. 11-11-00231-CR, 2014 WL 4809891, at *3 (Tex. App.—Eastland Sept. 25, 2014, no pet.) (mem. op., not designated for publication) (considering officer's directive "[s]top, police, hands behind your back" among the evidence that supported the element of awareness).

[6] *See* Tex. Transp. Code Ann. §§ 601.051(1), .191(a) (proscribing operation of a motor vehicle without financial responsibility such as liability insurance).

[7] *See id.* § 544.007(d) (proscribing the operator of a motor vehicle from entering an intersection when the traffic light is red).

[8] *See id.* § 521.025 (proscribing operation of a motor vehicle without a license).

[9] *See Vital v. State*, Nos. 2-02-421-CR, 2-02-422-CR, 2003 WL 22966375, at *2 (Tex. App.—Fort Worth Dec. 18, 2003, no pet.) (mem. op., not designated for publication) (noting that appellant's "motive for fleeing the police" was "highly probative" in establishing his culpable mental state); *see also Sanders v. State*, No. 02-11-00091-CR, 2012 WL 2579542, at *3 (Tex. App.—Fort Worth July 5, 2012, no pet.) (per curiam) (mem. op., not designated for publication) (describing defendant's motive for fleeing as that "he did not have a driver's license" and did not want to be apprehended for another offense, *inter alia*).

- Sergeant Brown still had Appellant's identification card when Appellant drove away.[10]

- The dashboard camera showed that when Appellant sped off, Sergeant Brown accelerated to catch up to him, followed closely behind him, and activated a siren that, based on their relative positions and the siren's volume, Appellant likely could not have failed to hear.[11]

- Nonetheless, Appellant drove rapidly through the parking lot, running three stops signs before veering onto the road.[12]

Viewing all the evidence in the light most favorable to the verdict, we hold that any rational factfinder could have found the element of awareness beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

---

[10] *See Martin v. State*, No. 07-16-00409-CR, 2018 WL 2031856, at *2 (Tex. App.—Amarillo May 1, 2018, no pet.) (mem. op., not designated for publication) ("However, the evidence also showed that [the officer] had not completed the issuance of a warning and was still in possession of appellant's driver's license when appellant left. This is some evidence that the detention was not complete.").

[11] *See Easter*, 2020 WL 3424950, at *2. There was no evidence that Appellant had an impairment that might have affected his ability to hear the siren. *Cf. Pool v. State*, No. 02-12-00640-CR, 2013 WL 4716019, at *5 (Tex. App.—Fort Worth Aug. 30, 2013, pet. ref'd) (per curiam) (mem. op., not designated for publication).

[12] *See Sanders*, 2012 WL 2579542, at *3 (holding evidence sufficient to show evading arrest, in part because appellant "ran a series of stop signs while pursued by a police car with flashing lights and sirens").

Appellant does not challenge the sufficiency of the evidence in any other respect. We therefore overrule Appellant's sole point of error.

Though we have overruled Appellant's point, we must modify the written judgment, sua sponte, so that it conforms with the trial court's oral pronouncements. At trial, Williams pleaded true to the enhancement paragraph, which alleged that he had two prior felony convictions, one committed after the other became final. *See* Tex. Penal Code Ann. § 12.42(d). The trial court orally pronounced a finding of true as to the enhancement paragraph. However, the written judgment bears the notation "N/A" as to the enhancement paragraph.

Fairness to the defendant requires that his sentence be pronounced orally in his presence. *Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014). A written judgment is simply the "declaration and embodiment" of that pronouncement. *Id.* When there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls. *Id.*

Here, the trial court orally pronounced an enhancement finding that is absent from the written judgment. An appellate court has the authority to modify a judgment to make it speak the truth. *Medrano v. State*, No. 02-19-00430-CR, 2020 WL 3410501, at *1 (Tex. App.—Fort Worth May 28, 2020, no pet.) (mem. op., not designated for publication). Consistent with that authority, we modify the judgment to reflect a finding of true as to the enhancement paragraph. *See Richardson v. State*, No. 01-06-00004-CR, 2007 WL 1559819, at *4–5 (Tex. App.—Houston [1st Dist.] May 31, 2007, pet. ref'd)

11

(mem. op., not designated for publication) (concluding that oral pronouncement of true on an enhancement controlled over a written judgment that omitted the enhancement).

## III. CONCLUSION

We modify the judgment of conviction to reflect a finding of true as to the enhancement paragraph. We affirm the judgment as modified.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 29, 2020